[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In the instant case, the parties were intermarried on April 14, 1973, at Springfield, Massachusetts. Plaintiff has been a resident of the State of Connecticut continuously for one year next before the date of the filing of the complaint.
There are two minor children issue of the marriage, Katherine O. Roule, born June 3, 1980 and Tara O. Roule, born March 6, 1982. There is no question, as the testimony has indicated, that the marriage between the parties has broken down irretrievably with no reasonable expectation of a reconciliation.
As is common in most of these cases, the dispute in this matter is over the allocation and distribution of the estate and alimony and support.
Though on the surface it appears that we have a twenty year marriage, in truth the marriage fell apart much sooner than CT Page 5200 this period of time. The husband left the bed but not the home of the plaintiff in mid 1981. Since Tara was born in March of 1982 it would appear to be that they physically separated shortly after Tara was conceived. The defendant continued to reside with the plaintiff until 1991 at which time the plaintiff instituted this suit for the dissolution of the marriage.
The plaintiff is employed as a school teacher making approximately $32,000 a year. She was a school teacher at the time of their marriage and stopped teaching to have a family. Before returning to teaching in 1988. She attended American International College in Springfield, Massachusetts and received a Master's Degree which she needed to return to teaching. She started out originally in 1988 teaching at $24,400 a year and is now making $32,000 a year.
The husband manages or acts as superintendent of a private golf course. Early on in the marriage he attained a job with The Hartford Golf Club and was making approximately $65,000 a year. At some time in the late 1980's he was terminated at that job involuntarily and took a job as an assistant manager or superintendent of the Avon Golf Club where he worked and again was terminated after a short period of time. He is currently employed at the Delwood Country Club in New York State, a private club, and is earning $72,000 a year plus a $2,000 IRA purchased in his name annually and he further has the use of a motor vehicle.
During the course of the marriage, the defendant did most of the investing of the family funds and the payment of bills. During the period the wife worked she turned her money over to the defendant who in turn gave her money for groceries and took care of the other expenses of running the household and investing the money as he saw fit. During the marriage, one of the investments was with Tucker Anthony and at the time of the separation of the parties the Tucker Anthony account was in the approximate amount of $34,676.00. Actually, the account with Tucker Anthony at one point was up to $55,000.00, but that included a trust account of $19,000.00 for the daughter Tara. Now at the time of the divorce, even though the stock market has been growing substantially over the last three years, the account is down to $2,220.00. The defendant admits that he used these monies for his own purposes and his wife, although she contributed to the funds, received no benefit from them. CT Page 5201
There was also mentioned an account for $30,000.00 which was in the plaintiff's name and her mother's name. These testimony developed that this was a joint account that the mother had set up and which the mother fully controlled and an account over which the plaintiff had no control and made no deposits to or withdrawals from. The question about that account arose because it was shown as a debt to her mother on the first financial statement filed by the plaintiff in 1991 and no longer appears on her financial statement, submitted for the purpose of the dissolution. There was a $10,000.00 gift by the plaintiff's mother when the parties purchased the family home at 7 Jay Circle, Windsor, Connecticut. This home was purchased in the late 1970's after the defendant became employed by The Hartford Golf Club.
This property has been appraised by the defendant's appraisor at $197,000.00 and by the plaintiff's appraisor at $150,000.00. The defendant originally had appraised this property a year and a half ago and the appraisal then was also $197,000.00, though the defendant's appraisor said that in the interim property values have declined anywhere from 10 to 15 percent. Using the worse case scenario, that is a decline of 15% in value, the property should currently be appraised at $167,450.00 based upon the defendant's own appraisor. The house does sit on a private road along with five other homes, the road though driveable is in disrepair and any repairs to the road would have to be made by levying assessments on the six homes that share the use of the private road. Also there is an in-ground pool that goes with the marital home. However, the pool is across the street from the front part of the house and it is surrounded by a stockade fence which is in disrepair and in need of replacement. The defendant's appraisor put a value of $20,000.00 on the pool though its replacement cost would be approximately $40,000.00. The plaintiff's appraisor put no value on the pool and indicated that pools vary, sometimes having a positive effect on the value of the house and sometimes having a negative effect on the house. This has been the experience also of the trier in past cases where pools were concerned. Often it is claimed that in-ground pools do have a negative effect on the value of the house. It probably is that the truth of the value of the house probably lies in between the two appraisals of $150,000.00 and $167,450.00.
There was also a $10,000.00 fund set aside for Tara. The monies in the fund were a gift from the great aunt and uncle of CT Page 5202 the plaintiff and the plaintiff has invaded the fund for her own use to a certain extent. However, she still retains $2,500.00 in cash and a $4,000.00 certified check in Tara's name which totals $6,500.00. The plaintiff withdrew the funds to pay her current attorney and her last attorney. Plaintiff has further spent $1,200.00 on wallpapering in the house and $3,000.00 on a deck replacement. The deck had been torn off by her husband while he was still living at Jay Circle. She also spent an additional $200.00 for other work on the house. She further had to purchase a new kitchen table and chairs for $450.00. The husband is looking for division of the family home so that he can raise enough money to purchase the condominium in which he presently dwells in New York. The plaintiff is looking for alimony and contribution toward the support of the older child who is currently residing with her and possession of the family home. The wife does have a retirement account with a current balance of $14,500.00 in the State Teachers Retirement Fund and the defendant has an IRA with value of approximately $14,800.00. Both have life insurance, the wife's cash value is $1,450.00 and the husband's is $7,650.00. The wife has an account at Springfield Institute for Savings for $1,450.00 and the husband lists just a $1,000.00 in the Tucker Anthony account. There is also jewelry which both parties have listed on the financial affidavits. Neither one has testified to the jewelry but there is a large discrepancy as to the value placed upon it in the financial affidavits. There is also a painting whose value is also in dispute. There are also some custodial accounts for Tara and Katie, the two daughters, which are approximately equal in value the wife being custodian for Tara on Tara's larger account and the husband on a smaller account for Tara plus the husband is also a custodian for Katie's accounts.
The husband is also seeking to keep his support payment payable to the wife at $75.00 per week based upon using the child support guidelines. However, since both parties are working, their income far exceeds the income set forth in the guidelines and the court is not bound therefore to follow the guidelines in determining the support that the husband would pay to the wife based upon the differences in their salary and income.
The husband did manage the family funds all through the marriage and had the ability to accumulate assets which the plaintiff was not really aware of. The dissipation of the Tucker Anthony account to the tune of $30,000.00 to $32,000.00 CT Page 5203 over the last two years leads the court to wonder what happened to the money. There has been no real accounting for that kind of expenditure on the part of the husband. He has been renting though he has paid a minimum down payment of approximately $1,500.00 on the condominium that he is desirous of purchasing.
This has not been a happy marriage since approximately 1981 when the defendant left the plaintiff's bed. The plaintiff has made several attempts at seeking a reconciliation with her husband and seeking counselling with him to no effect. He on the other hand doesn't seem to have made any effort to make this into a viable marriage even though they have lived under the same roof for the last 10 years of their marriage.
Based upon all of the above facts and applying the statutory criteria as set forth in the Connecticut General Statutes the court will enter an order dissolving the marriage; custody of the children shall be awarded jointly to both parents with the primary residence of Tara being with the defendant father and the primary residence of Katie with the plaintiff mother. Visitation will give each parent both children on alternating weekends and on a holiday schedule which has not been placed into the evidence but which hopefully could be worked out by the parties. If it cannot be worked out it should be returned to the court for the purpose of the court applying a visitation schedule depending upon the holidays of the years and which would not interfere with the schooling of either child. Since the defendant who lives in the New York area, and the plaintiff resides in the Windsor, Connecticut area there should be a common meeting ground where the children can be exchanged for the purposes of the visitation. The weekend visitations should be worked out so that both children are with one parent on the weekend. That will give the siblings a chance to grow and know each other as sisters. The same situation should be worked out for the holiday visitations and this should include a summer visitation of at least two weeks where both children can spend at least two weeks together with one parent and then two weeks together with the other parent. The court will continue the current support order of $100.00 per week payable by the defendant to the plaintiff. This exceeds the guidelines but because of their earnings as indicated earlier the guidelines do not apply in this particular case. Alimony to the plaintiff shall be in the amount of $100.00 per week payable over a period of ten years after the judgment of dissolution. The court finds the value of the property to be $160,000.00 based upon the CT Page 5204 appraisals as testified to in court. There is a mortgage of $43,000.00 on the house, leaving a net equity of $117,000.00. The property should be divided with 35% of the value of this asset to the husband and 65% to the wife. The plaintiff wife will give the husband a promissory note secured by a mortgage based upon the net equity of $117,000.00. Said note and mortgage will have a face value of $40,950.00. Said mortgage shall carry interest at the rate of 5% per annum and said mortgage shall become due and payable upon the death of the plaintiff, or her remarriage, bankruptcy, sale of the house, or the youngest child living with the plaintiff attaining the age of 18. The plaintiff will hold the defendant harmless on the first mortgage but the mortgage to the defendant shall be subordinate to the current lien or first mortgage on the house or its substitute in the event a refinancing becomes necessary providing the principle amount of $43,000.00 is not exceeded.
Both parties will keep their own retirement funds, both parties shall retain title to their own automobiles and execute whatever documents are necessary to give clear title to the other of the motor vehicle being used by the individual party.
Both parties will maintain life insurance in a sum of not less than $100,000.00 naming the other party as primary and irrevocable beneficiary as long as either party has a financial obligation for the support of the minor children whether that be a financial obligation or merely the statutory obligation to support. Plaintiff wife shall retain all her jewelry and the defendant husband will have title to the Blish painting. Plaintiff will turn over to the defendant the following personal floor lamp, duplicates of the pictures of the children in pink dresses, all the silver golf trophies, one (1) set of white dishes, one (1) framed Bermuda map, and one of the two electric mixers, and miscellaneous personal items consisting of defendant's clothes and work papers. The defendant should further pay to the plaintiff one-half of all un-reimbursed health care expenses to which he has not yet contributed accruing since the date of this action. The plaintiff will continue her health insurance and the defendant should also continue any health insurance available to him thru their places of employment and both parties shall remain liable for one-half of all un-reimbursed medical expenses.
There is also a seeming dissipation of the Tucker Anthony account in the approximate amount of $32,000.00, one-half which CT Page 5205 should be credited to the plaintiff. The defendant is ordered to reimburse the plaintiff the sum of $16,500.00 or in the alternative she may reduce the mortgage on the house payable to the husband and also the promissory note which said mortgage secures by the sum of said $16,500.00. The defendant should further reimburse the plaintiff the sum of $702.33 being his half of the share of the tax levy based upon capital gains contributable to both parties in 1989 and each party shall remain liable for their own debts as shown on their respective financial affidavits.
Each party shall take as a dependent for Income Tax purposes the child residing with that parent, except if the defendant is more than 45 days delinquent in his support payments in any one year, he shall forfeit his right to take the dependency of any child living with him that year to the plaintiff.
In the event either parent becomes unemployed and thereby loses any health plan available to him, or her, as the case may be, the other parent shall maintain both children on his or her health policy. Unreimbursed medical expenses shall continue to be split equally.
Accordingly, all orders as set forth above, may enter.
Kline, State Trial Referee